0 ✓

1
2
3
4
5

6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11    JANET HERRERA,                        )  Case No. EDCV 09-1567-OP
12                      Plaintiff,          )
                 v.                         )  MEMORANDUM OPINION; ORDER
13                                          )
      MICHAEL J. ASTRUE,                    )
14    Commissioner of Social Security,      )
15                      Defendant.          )
16    _____     )

17        The Court[1] now rules as follows with respect to the disputed issues listed in

18    the Joint Stipulation ("JS").[2]

19    / / /

20    / / /

21    / / /

22

23

24        [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
      the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

25

26        [2] As the Court stated in its Case Management Order, the decision in this
      case is made on the basis of the pleadings, the Administrative Record, and the

27    Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal

28    Rules of Civil Procedure, the Court has determined which party is entitled to
      judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.

## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the lay witness statement;

2. Whether the ALJ properly developed the record; and

3. Whether the ALJ properly considered Plaintiff's testimony.

(JS at 2.)

# II.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

/ / /

# III.

## DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff had the severe impairments of asthma, back pain, and status post left knee surgery.  (Administrative Record ("AR") at 14.) The ALJ also recognized a diagnosis of mild scoliosis, but did not find it to rise to the level of a severe impairment.  (Id.)  He found Plaintiff had the residual functional capacity ("RFC") to perform medium work, with the exception that she must avoid even moderate exposure to extreme cold or pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  (Id. at 15.)  The ALJ concluded Plaintiff could perform her past relevant work as a telemarketer and could also perform alternative jobs existing in significant numbers in the national economy, such as office helper, cashier, and laundry worker.  (Id. at 17, 18.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (Id.)

**B.    Lay Witness Testimony.**

Delores Cook, identified as Plaintiff's friend, reported in a third-party function report that Plaintiff is able to wash dishes, do laundry, vacuum, cook, and care for her children.  (Id. at 132, 133, 134.)  Ms. Cook explained that Plaintiff does her household chores "little by little" and that she helps Plaintiff fold laundry, wash dishes, and carry the groceries.  (Id. at 134.)  Ms. Cook explained that Plaintiff experiences pain when bending and that her hands shake when doing tasks such as brushing her hair, writing, and cooking.  (Id. at 133, 136, 138.)  Ms. Cook further explained that Plaintiff has trouble record keeping and sometimes needs instructions repeated.  (Id. at 135, 137.)  In addition, in response to the question "Describe any changes in social activities since the illnesses, injuries, or conditions began," Ms. Cook reported that "[w]e used to walk together more - about 3 years ago.  Now, she's more tired or in pain."  (Id. at 137.)  Also, Ms. Cook reported that Plaintiff's illness, injuries and disabling conditions affect her

1 | ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, use hands,

2 | and complete tasks. (Id.) Ms. Cook estimated that Plaintiff could lift about ten

3 | pounds, but that any more weight would cause her pain in her hands, arms, legs,

4 | and back. (Id.) She also estimated that Plaintiff could walk for thirty minutes at a

5 | time and then had to rest for ten minutes before walking again. (Id.)[3] Plaintiff

6 | contends it was error for the ALJ to ignore this statement without explanation. (JS

7 | at 3-4, 7-8.)

8 | Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

9 | medical evidence, the Commissioner "may also use evidence from other sources to

10 | show the severity of [an individual's] impairment(s) and how it affects [his]

11 | ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by

12 | friends and family members in a position to observe a claimant's symptoms and

13 | daily activities have routinely been treated as competent evidence." Sprague v.

14 | Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn

15 | hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

16 | Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

17 | See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

18 | If the ALJ chooses to reject such evidence from "other sources," he may not do so

19 | without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons

20 | that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.

21 | 1993).

22 | The ALJ's failure to address lay witness testimony generally is not

23 |

_____

24 | [3] Notably, despite Ms. Cook's claims that Plaintiff is not able to walk as
25 | much as she used to, her estimation that Plaintiff can walk for thirty minute
26 | intervals with ten minute rest periods, is equivalent to the ALJ's finding that
     | Plaintiff can walk for up to six hours in an eight-hour work day. (AR at 15, 137.)
27 | In addition, although Ms. Cook claimed that Plaintiff's hand shook when doing
28 | every day tasks, by Ms. Cook's own account this did not prevent Plaintiff from
     | engaging in rather extensive daily activities. (Id. at 132, 133, 136, 138.)

1   harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991). In failing to

2   address a lay witness statement, the error is harmless only if "a reviewing court . . .

3   can confidently conclude that no reasonable ALJ, when fully crediting the

4   testimony, could have reached a different disability determination." Stout v.

5   Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins

6   v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

7          The Commissioner impliedly concedes the ALJ failed to address the lay

8   witness statements of Ms. Cook. (JS at 5-7.) However, even if the ALJ's failure

9   to address the testimony of Ms. Cook was error, the error is harmless because no

10  reasonable ALJ would have reached a different disability determination having

11  considered it. Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885. This is

12  because many of Ms. Cook's opinions are not inconsistent with the ALJ's RFC

13  findings, which in turn were based on substantial evidence of record. To the

14  extent Ms. Cook's opinions conflicted with the ALJ's findings, they mirrored the

15  subjective complaints of Plaintiff and the limitations reported in a February 8,

16  2006, report ("Report") by an unknown physician, both of which were properly

17  rejected by the ALJ, as discussed in Parts III.C and D, below. Thus, the Court

18  finds that even if this testimony was fully considered, no reasonable ALJ could

19  have reached a different disability determination.

20         Based on the foregoing, even if the ALJ erred by failing to consider the

21  testimony of Ms. Cook, the record reflects other evidence sufficient such that

22  consideration of Ms. Cook's opinion would not cause a reasonable ALJ to find

23  Plaintiff disabled. Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885.

24  Thus, any error was harmless.

25  **C.     Whether the ALJ Properly Developed the Record.**

26         In the Report, titled "Medical Opinion Re: Ability to Do Work-Related

27  Activities (Physical)," an unknown evaluator opined that Plaintiff could lift and

28  carry less than ten pounds occasionally or frequently, and could only walk and sit

for about two hours each during an eight-hour day. (AR at 390.) The evaluator also estimated that Plaintiff could only sit and stand for fifteen minutes at a time before changing positions. (Id. at 391.) According to the assessment, Plaintiff could walk for thirty minutes at a time, every twenty minutes. (Id.)[4] The evaluator also determined that Plaintiff needed the opportunity to shift at will from sitting or standing/walking, and would need to lie down at unpredictable intervals during a work shift. (Id.) The evaluator stated that Plaintiff could only occasionally twist, stoop, crouch, and climb stairs and ladders. (Id.) In addition, the evaluator found that Plaintiff's physical limitations affect her ability to reach, handle, finger, feel, push, and pull. (Id. at 392.) Finally, the evaluator estimated that Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. (Id.) The report was signed by a "physician" but the physician's name is not legible. (Id.)[5]

In his decision, the ALJ discussed the Report as follows:

> I give very little weight to the opinion dated February 8, 2006. . . First, the name is illegible. There is no indication whether the source is a treating or consulting source and whether the author is an acceptable medical source or not. Second, the progress notes from the claimant's treating sources and the evaluations by consulting sources do not substantiate the extreme functional limits endorsed by the author. I give greater weight to the well-substantiated opinions of consulting internist

---

[4] It appears inconsistent to recommend that Plaintiff walk for thirty minutes in twenty minute intervals. This inconsistency is not explained in the report.

[5] In comparing the signature to other treatment records, it appears the signature is consistent with Plaintiff's treating physician, Arthur Jimenez, M.D. (AR at 187-241, 472-502.) For purposes of this analysis, the Court gives Plaintiff the benefit of the doubt and assumes the report was authored by her treating physician.

1   C. Enriquez, M.D. who evaluated the claimant in June 2002 and re-

2   evaluated the claimant in May 2005.

3   (Id. at 17 (citations omitted).)

4   Plaintiff contends the ALJ should have put forth an effort to identify the

5   source of the report or "left the record open and allowed Plaintiff the opportunity

6   to supplement the record with the requested information." (JS at 9-10.) The Court

7   does not agree.

8   The ALJ has an independent duty to fully and fairly develop a record in

9   order to make a fair determination as to disability, even where the claimant is

10  represented by counsel. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.

11  2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

12  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); see also Crane v. Shalala,

13  76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th

14  Cir. 1983)). Ambiguous evidence, or the ALJ's own finding that the record is

15  inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty

16  to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150 (citing

17  Smolen, 80 F.3d at 1288). However, it is the plaintiff's burden to prove disability.

18  Baylis v. Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the

19  burden of proving that she is disabled") (quoting Meanel v. Apfel, 172 F.3d 1111,

20  1113 (9th Cir. 1999)).

21  First, the ALJ did leave the record open for supplementation. At the very

22  beginning of the hearing, the ALJ explicitly ordered counsel to "have any

23  additional records sent here by March 5 care of Pat, and we'll add those in the

24  file." (AR at 38.) Accordingly, if Plaintiff or Plaintiff's counsel was under the

25  impression that the record needed to be supplemented with respect to the Report,

26  they had nearly three weeks from the date of the hearing to do so.

27  Second, although the ALJ noted that he could not identify the signature on

28  the report, he continued with his consideration of the report as if it had come from

7

1    an acceptable medical source.  The ALJ properly rejected the report as not being

2    supported by any of the medical evidence, including the records from Plaintiff's

3    treating sources.

4          It is well-established in the Ninth Circuit that a treating physician's opinions

5    are entitled to special weight, because a treating physician is employed to cure and

6    has a greater opportunity to know and observe the patient as an individual.

7    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

8    physician's opinion is not, however, necessarily conclusive as to either a physical

9    condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

10   751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

11   whether it is supported by sufficient medical data and is consistent with other

12   evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

13   physician's opinion is uncontroverted by another doctor, it may be rejected only

14   for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

15   1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

16   physician's opinion is controverted, it may be rejected only if the ALJ makes

17   findings setting forth specific and legitimate reasons that are based on the

18   substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

19   2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

20   Cir. 1987).

21         However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

22   opinion of any physician, including a treating physician, if that opinion is brief,

23   conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d

24   at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

25   1992).  A treating or examining physician's opinion based on the plaintiff's own

26   complaints may be disregarded if the plaintiff's complaints have been properly

27   discounted.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

28   1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

8

1  v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

2  of the claimant's treating physician is contradicted, and the opinion of a

3  nontreating source is based on independent clinical findings that differ from those

4  of the treating physician, the opinion of the nontreating source may itself be

5  substantial evidence; it is then solely the province of the ALJ to resolve the

6  conflict."  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

7  Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

8          Here, the Report was controverted by the reports of consulting physician

9  Concepcion A. Enriquez, M.D.  As a result, the Report could be rejected only if

10  the ALJ made findings setting forth specific and legitimate reasons that are based

11  on the substantial evidence of record.  Thomas, 278 F.3d at 957; Magallanes, 881

12  F.2d at 751; Winans, 853 F.2d at 647.

13          Simply put, the ALJ rejected the Report because it was not supported by any

14  evidence in the record, whether from a treating or consulting source.  (AR at 17.)

15  An April 15, 2003, x-ray revealed dextroscoliosis compatible with muscle spasm.

16  (Id. at 241.)  A September 3, 2003, an MRI of Plaintiff's lumbar spine revealed

17  minimal disk degeneration of the upper lumbar region and degenerative arthritic

18  changes of the lumbar spine, but no evidence of additional significant abnormality

19  such as disk herniation, canal stenosis, lateral recess narrowing, or foramen

20  encroachment.  (Id. at 239-40.)  February 8, 2006, x-rays of Plaintiff's lumbar

21  spine[6] revealed "mild dextroangulation, which may reflex [sic] unilateral

22  paraspinous muscle spasm or scoliosis, otherwise unremarkable."  (Id. at 489.)

23  Plaintiff's treating sources routinely found that Plaintiff suffered from mild back

24  disorders, including scoliosis, which resulted in some pain.  However, Plaintiff

25

26

27          [6] Plaintiff's physician authored the Report on the same day that these x-rays

28  revealed mild impairments of the lumbar spine.

9

never received more than conservative treatment for her back impairment. (Id. at 194, 197, 201, 202, 283, 505, 508.) Although Plaintiff states that at one time she received physical therapy, she also states that her treating physician has refused a referral for continued therapy. (Id. at 156.)

The consultative medical evidence is no more supportive of the severe limitations reported in the Report. Dr. Enriquez, the consultative physician who examined Plaintiff on two separate occasions, also found that Plaintiff suffered from mild back impairments. In her June 14, 2002, report, Dr. Enriquez reported that Plaintiff's cervical spine was within normal limits. (Id. at 349.) Plaintiff exhibited tenderness in the lumbosacral spine area, but had no limitation in her range of motion and no muscle spasms. A straight-leg-raising test was negative, bilaterally. (Id.) In addition, Plaintiff did not exhibit any muscle atrophy or other loss of muscle tone and bulk, and her strength was within normal limits. (Id.) Dr. Enriquez further reported that Plaintiff's gait and balance were within normal limits and she did not need any assistance in ambulation. (Id. at 350.) Plaintiff did not exhibit any signs of radiculopathy. (Id.) Dr. Enriquez determined that Plaintiff maintained the RFC to lift and carry twenty-five pounds frequently and fifty pounds occasionally, and sit and stand/walk for six hours in an eight-hour day. Dr. Enriquez concluded, however, that Plaintiff should avoid exposure to extreme temperature, dust, chemicals, and fumes. (Id.)

On July 2, 2002, consulting physician, Joseph Hartman, M.D., completed a Physical Residual Functional Capacity Assessment of Plaintiff. Dr. Hartman concluded that Plaintiff could lift or carry twenty-five pounds frequently and fifty pounds occasionally, and could sit and stand/walk for six hours in an eight-hour day. (Id. at 354.) Dr. Hartman noted that Plaintiff was capable of only limited fingering. (Id. at 356.) He further concluded that Plaintiff should avoid concentrated exposure to extreme temperatures and even moderate exposure to

1    fumes, odors, dusts, gases, and poor ventilation. (Id. at 357.)

2         In her May 11, 2005, report, Dr. Enriquez again found that Plaintiff's

3    cervical spine appeared within normal limits, but that there was tenderness of the

4    lumbar spine. (Id. at 363.) Plaintiff exhibited a slight decreased range of motion

5    of the lumbar spine, but did not present with muscle spasms. (Id.) Straight-leg-

6    raises were negative, bilaterally. (Id.) Dr. Enriquez noted "very mild scoliosis."

7    (Id.) At that time, Plaintiff was able to generate twenty pounds of force with her

8    right, dominant hand and fifteen pounds of force with her left hand. (Id. at 362.)

9    Plaintiff's strength was within normal limits and she did not exhibit any atrophy or

10   other loss of muscle tone and bulk. (Id. at 364.) Her gait and balance were within

11   normal limits and she did not require an assistive device for ambulation. (Id.)

12   Plaintiff did not show any signs of radiculopathy. (Id. at 365.) Dr. Enriquez

13   opined that Plaintiff maintained the same RFC that Dr. Enriquez reported in her

14   June 14, 2002, report. (Id.)

15        A June 2005 Residual Functional Capacity Assessment completed by an

16   unidentifiable consulting physician concluded that Plaintiff could lift and carry

17   twenty-five pounds frequently and fifty pounds occasionally. (Id. at 367.) The

18   physician also concluded that Plaintiff could sit and stand/walk for six hours in an

19   eight-hour day and could only occasionally climb, balance, stoop, kneel, crouch,

20   or crawl. (Id. at 367, 368.) Finally, the physician concluded that Plaintiff should

21   avoid even moderate exposure to extreme cold such as walk in freezers, and

22   fumes, odors, dusts, gases, and poor ventilation such as might be found in silos,

23   mills, and outdoor work. (Id. at 370.)

24        None of this medical evidence supports the Report's findings of extreme

25   limitations in Plaintiff's RFC. Accordingly, the ALJ properly rejected the Report

26   on this basis. See Thomas, 278 F.3d at 957 ("[t]he ALJ need not accept the

27   opinion of any physician, including a treating physician, if that opinion is brief,

28

11

conclusory, and inadequately supported by clinical findings."); <u>Andrews</u>, 53 F.3d at 1041 ("[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

Accordingly, despite having noted that the signature on the Report was illegible, the ALJ treated the report as if it had come from an acceptable medical source, properly considered it as such, and ultimately rejected it for clear and convincing reasons. It is clear from this analysis that the record was sufficient to allow for proper evaluation of the evidence. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1150 (citing <u>Smolen</u>, 80 F.3d at 1288). Thus, the ALJ had no duty to further develop the record.

**D.   <u>Whether the ALJ Properly Considered Plaintiff's Testimony.</u>**

Plaintiff contends the ALJ failed to articulate any legally sufficient reasons for rejecting Plaintiff's testimony regarding the severity of her pain and other nonexertional limitations. (JS at 12-14, 17-18.)

The ALJ gave a lengthy analysis of Plaintiff's credibility with respect to her subjective complaints of impairment. Specifically, the ALJ concluded that Plaintiff's testimony was not supported by the weight of the objective evidence. (AR at 15-16.) In addition, the ALJ concluded that Plaintiff's subjective complaints were not supported by any aggressive course of treatment or side effects such as muscle atrophy, weight loss or gain, or significant sleep deprivation.[7] (<u>Id.</u> at 16.) Finally, the ALJ found that Plaintiff's subjective

---

[7] Plaintiff and Ms. Cook both indicated in their statements that Plaintiff experiences some sleep deprivation. (AR at 138, 150.) However, as found by the
(continued...)

complaints were not consistent with her level of daily activities, such as household chores and caring for her children. (Id.)

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. § 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may

---

[7](...continued)

ALJ, "significant" sleep issues are not reflected in the medical evidence.

1 | properly rely on the fact that only conservative treatment had been prescribed);

2 | Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on

3 | claimant's daily activities and the lack of side effects from prescribed medication).

4 |     Here, the ALJ found that Plaintiff's statements concerning her subjective

5 | complaints and alleged limitations were not consistent with her medical records

6 | and daily activities. (AR at 15-16.)  He noted that other than during episodes of

7 | exacerbated asthma, Plaintiff had received minimal and conservative treatment for

8 | her impairments and that prescribed medications have been relatively effective in

9 | controlling Plaintiff's symptoms. (Id.)  This reason for rejecting Plaintiff's

10 | credibility is supported by the medical evidence as discussed in Part III.C, above.

11 | (Id. at 156, 194, 197, 201, 202, 283, 505, 508.)  Although an ALJ may not

12 | disregard a claimant's testimony solely because it is not substantiated

13 | affirmatively by objective medical evidence, the lack of medical evidence is a

14 | factor that the ALJ can consider in his credibility assessment. Burch v. Barnhart,

15 | 400 F.3d 676, 681 (9th Cir. 2005).

16 |     The ALJ also discussed inconsistencies in Plaintiff's testimony and her

17 | level of daily activities. (Id. at 16.)  The uncontested evidence established that,

18 | despite her alleged impairments, Plaintiff maintained the ability to do laundry,

19 | cook, wash dishes, vacuum, walk for thirty minutes at a time, and care for her

20 | children. (Id. at 43, 132, 133, 134,  148, 151, 152, 137.)  Plaintiff's main

21 | complaints regarding housework were that she had to do it "little by little" and that

22 | she could not move furniture or clean under beds. (Id. at 43, 159.)  This level of

23 | activity is not consistent with Plaintiff's subjective complaints of total disability.

24 | Accordingly, the ALJ properly rejected Plaintiff's testimony on this basis. Burch,

25 | 400 F.3d at 680 (ALJ can discredit plaintiff's subjective symptom testimony due

26 | to plaintiff's "wide range" of daily activities).

27 |     Based on the foregoing, the Court finds the ALJ's credibility finding was

28 |

14

1   supported by substantial evidence and was sufficiently specific to permit the Court

2   to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

3   testimony.  Thus, there was no error.

**IV.**

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: May 19, 2010

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge